779 F.2d 1353
 121 L.R.R.M. (BNA) 2054, 104 Lab.Cas. P 11,742
 Ignacio E. CHAVEZ, Mario Silva, Filiberto Peralta, Elston G.
McArthur, Ruben J. Castro and Mary C. DeLoa, Appellees,
v.
UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION,
AFL-CIO-CLC; and District Union 271, United Food
& Commercial Workers International
Union, AFL- CIO-CLC, Appellants.
Ignacio E. CHAVEZ, Mario Silva, Filiberto Peralta, Elston G.
McArthur, Ruben J. Castro and Mary C. DeLoa, Appellants,
v.
UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION,
AFL-CIO-CLC; and District Union 271, United Food
& Commercial Workers International
Union, AFL- CIO-CLC, Appellees.
Ignacio E. CHAVEZ, Mario Silva, Filiberto Peralta, Elston G.
McArthur, Ruben J. Castro and Mary C. DeLoa,
Arthur Lee Stennis, Intervenor/Plaintiff
below, Appellant,
v.
UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION,
AFL-CIO-CLC; and District Union 271, United Food
& Commercial Workers International
Union, AFL- CIO-CLC, Appellees.
 Nos. 85-1200 to 85-1202.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 11, 1985.
Decided Dec. 18, 1985.
Rehearing and Rehearing En Banc Denied Feb. 12, 1986.
 
 Thomas F. Dowd, Omaha, Neb., for appellants.
 Stephen J. Feinberg, Chicago, Ill., for appellees.
 Before HEANEY, JOHN R. GIBSON and FAGG, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 District Union 271, United Food & Commercial Workers Union, appeals from an order of the district court denying its motion for judgment notwithstanding the verdict or a new trial, in the face of the jury's award of damages against District 271 for breaching its duty of fair representation under section 9(a) of the National Labor Relations Act, 29 U.S.C. Sec. 159(a), and 28 U.S.C. Sec. 1337. Ignacio E. Chavez, Mario Silva, Filiberto Peralta, Elston G. McArthur, Ruben J. Castro and Mary C. DeLoa cross appeal. The principal issues on appeal are whether District 271 and its international parent owed the appellees a duty of fair representation; if so, what the nature of this duty was and whether it was breached; and, finally, whether the appellees detrimentally relied on the alleged union misconduct. We reverse the trial court's order with respect to Chavez, DeLoa and Castro, and modify the order with respect to Silva, Peralta and McArthur. We find the cross appeal to be without merit.
 
 
 2
 I. FACTS.
 
 
 3
 On November 4, 1976, the National Labor Relations Board certified District 271 as the collective bargaining representative for a designated unit of employees at Northern States Beef, Inc. (NSB). At that time, the appellees were all members of that unit. After NSB refused to recognize and bargain with District 271, District 271 filed an unfair labor practice charge with the NLRB against NSB. In July, 1977, the NLRB found that NSB was committing unfair labor practices and ordered it to bargain with District 271. The NLRB further directed that the one-year certification period of required recognition and bargaining did not begin until the date the company commenced bargaining in good faith.
 
 
 4
 The parties did not bargain until June, 1978, and they ultimately failed to agree on a contract. Employee support for District 271 lagged, and the union's certification and presumed majority status expired in June, 1979.
 
 
 5
 District 271 and NSB did not meet again until August 8, 1980, when District 271 sought to reopen negotiations. NSB refused and questioned District 271's majority status. Despite further demands for negotiation and assurances by District 271 that it represented a substantial majority of employees in the appropriate unit, NSB maintained its position and refused to bargain.
 
 
 6
 At a meeting held on September 3, 1980, a quorum of bargaining unit employees voted in favor of a strike to commence against NSB the following day. Present at this meeting were Richard Jennum, the President of District 271, and Frank Jackson, an authorized representative of the International. The appellees allege that they were induced to strike by misrepresentations made by Jennum and Jackson, the principal misrepresentation being that the strikers would be unfair labor practice strikers rather than economic strikers, and thus could not be permanently replaced. District 271 claimed that the employees were informed that they would be unfair labor practice strikers only if the NLRB ruled in their favor on a proposed charge.
 
 
 7
 The strike commenced on September 4, 1980. Thereafter, on September 8, 1980, District 271 filed an unfair labor practice charge with the NLRB against NSB for refusing to bargain. After investigation, the NLRB advised District 271 that, absent withdrawal of the charge, the NLRB would dismiss it on the ground that NSB could reject District 271's claim of majority status and insist on an election. District 271 withdrew the charge on October 14, 1980, and, on October 17, 1980, convened a meeting of the strikers and informed them that they were not unfair labor practice strikers, which would have entitled them to immediate reinstatement upon an offer to return to work, and instead were economic strikers entitled to reinstatement only as vacancies occurred. The strikers nonetheless voted to continue the strike.
 
 
 8
 Meanwhile, the plant continued production with strike replacements, and on December 18, 1980, the strike was terminated. Richard Jennum, on behalf of the striking employees, made an unconditional offer to return to work immediately. The company agreed to reinstate striking employees as positions became available. Eventually, after a delay of up to two years, all of the appellees were reinstated with full seniority benefits.
 
 
 9
 On April 13, 1981, the appellees brought this action, as a class action, under section 9(a) of the National Labor Relations Act, 29 U.S.C.A. Sec. 159(a), and 28 U.S.C.A. Sec. 1337 against the International and District 271. The complaint alleges a breach of duty of fair representation which resulted in wage losses due to delay in job reinstatement as a result of the strike against NSB. The district court refused to allow the action to proceed as a class action, and set the case for jury trial. The jury returned a verdict, finding District 271 liable and the International Union not liable. Damages were assessed to cover appellees' lost wages from the date of the strike until reinstatement. The district court then denied the appellees an award of attorneys' fees.
 
 
 10
 II. DISCUSSION.
 
 
 11
 District 271 first argues that it did not owe to the appellees a duty of fair representation under section 9(a) of the NLRA, 29 U.S.C. Sec. 159(a) because it was not certified as their exclusive bargaining representative. It cites Kuhn v. National Assoc. of Letter Carriers Branch 5, 528 F.2d 767, 770 (8th Cir.1976), where we held that "exclusive representation is a necessary prerequisite to a statutory duty to represent fairly." Although that is a correct statement of the law,[1] the question here is what is sufficient to establish exclusive representative status for purposes of imposing a duty of fair representation. The appellees contend that District 271 was their exclusive representative because a majority of the employees in the bargaining unit had signed cards designating it as their collective bargaining representative, and District 271, with intent to create reliance, represented itself as their exclusive bargaining agent. District 271 argues that it would be contrary to law, or at least bad policy, to hold it to a duty of fair representation as exclusive representative on the basis of its card majority because the NLRB and the Supreme Court have held that an employer "should not be found guilty of a violation of Sec. 8(a)(5) [of the NLRA] solely on the basis of [its] refusal to accept evidence of majority status other than the result of a Board election."[2] Linden Lumber Division, 190 NLRB 718, 721 (1971), aff'd, 419 U.S. 301, 95 S.Ct. 429, 42 L.Ed.2d 465 (1974). Whatever the merits of that position, it does not mean that a union may never be held to some duty of fair representation where a majority of employees have designated the union as their bargaining agent, the union has accepted that designation and has attempted to bargain on their behalf but has failed to represent them fairly in the process.
 
 
 12
 The district court instructed the jury that
 
 
 13
 [i]f you find that the agents or representatives of District 271, by their words, conduct, action or inaction, held out District 271 as the certified or designated exclusive representative of the bargaining unit, doing so with the intent that plaintiffs rely on the same, and that plaintiffs did act in reliance thereon, then you must find that District 271 is estopped and prevented from denying its status as the certified or designated exclusive representative of the bargaining unit.
 
 
 14
 On the narrow facts of this case, we find that the district court did not err in so instructing the jury. The union did in fact represent a majority of the employees in the bargaining unit--as reflected in its card majority and its support in the strike--and the evidence fully supports the jury's finding that the union held itself out as exclusive representative with the intent and effect of creating reliance thereon.
 
 
 15
 The second issue is whether the district court properly instructed the jury on what is required to prove a breach of the duty of fair representation. The court told the jury that it could find the union liable if
 
 
 16
 [t]hese representations were made without good faith and honesty of purpose or were made with hostile intent or in a discriminatory, arbitrary or perfunctory manner. [Emphasis added.]
 
 
 17
 The union objected to the reference to "perfunctory" conduct on the ground that in this case, the jury was required to find that the union acted in bad faith. It cites language from Ethier v. United States Postal Service, 590 F.2d 733, 737 n. 3 (8th Cir.), cert. denied, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979), that "improper union motivation is the crux of the fair representation doctrine," and contends that the "perfunctory" conduct standard applies only in cases involving union handling of employee grievances. Schultz v. Owens-Illinois, 696 F.2d 505, 514 (7th Cir.1981); Swatts v. United Steelworkers of America, 585 F.Supp. 326, 330 (S.D.Ind.1984). See also Vaca v. Sipes, 386 U.S. 171, 190-91, 87 S.Ct. 903, 916-17, 17 L.Ed.2d 842 (1967); Ford Motor Co. v. Huffman, 345 U.S. 330, 337, 73 S.Ct. 681, 685-86, 97 L.Ed. 1048 (1953). We agree with that contention. However, we find that the jury instruction's brief reference to "perfunctory" conduct is not reversible error because the instructions, read as a whole, fairly convey the idea that mere perfunctory conduct would not justify liability. The court instructed the jury that
 
 
 18
 [a] wide range of reasonableness is allowed a labor union in the exercise of its obligation as the employees' exclusive bargaining representative, subject always to complete good faith and honesty of purpose in the exercise of its discretion.
 
 
 19
 * * *
 
 
 20
 * * *
 
 
 21
 Honest, but mistaken, conduct, [or] proof of mere negligence, poor judgment or ineptitude, [or an] honest misunderstanding of the law, [does not constitute a breach of the duty of fair representation]. You are further instructed that a union representative is not a lawyer, cannot be expected to function as a lawyer and a union representatives opinions are not to be measured by the standards applicable to attorneys.
 
 
 22
 Instruction No. 8.
 
 
 23
 Although not ideal, the instructions fairly conveyed the law and the evidence supports the view that the union was not held responsible for merely negligent or perfunctory conduct. Moreover, a reading of Instruction Number 8 leads us to reject District 271's contention that its representations were inactionable opinions of law. Instruction Number 8 incorporates language reflecting this Court's holding in Curtis v. United Transportation Union, 700 F.2d 457, 458 (8th Cir.1983), that lay union representations on legal matters may be actionable but that a less stringent duty of fair representation applies because " 'A union representative is not a lawyer and cannot be expected to function as one.' "
 
 
 24
 The union next contends that the appellees failed to establish a breach of any duty of fair representation because they failed to prove that they relied upon the misrepresentations or that reliance was reasonable.[3] Resolution of this issue requires that we carefully examine the record with respect to each of the six appellees. Castro testified that he never attended a union meeting prior to the strike. He testified that he "went out on strike because everybody else was and I was not going to cross the picket line." Although he suggests that after the strike began, he heard Union President Jennum state that they were unfair labor practice strikers, he testified that he would not have crossed the picket line in any event. He testified that he stayed out on strike because his fellow employees had all agreed to do so and to stick together. Our careful review of the testimony reveals that Castro did not go out on strike or stay out on strike because of any alleged union misrepresentations. Accordingly, the jury's verdict and Castro's damage award is vacated.
 
 
 25
 Although appellee DeLoa testified that she attended one union meeting prior to the strike, nowhere does she testify that she went out on strike or stayed out on strike because of union misrepresentations as to whether she was an unfair labor practice striker. She was asked, "When you joined in the strike, you had no knowledge whether or not the company could replace employees?" She answered, "No, I did not." She further testified that she was aware that she could lose her job because of the strike. Because the record is devoid of any evidence that she relied on any union representations, we vacate the jury's verdict and damage award in her favor.
 
 
 26
 Evidence of reliance is also lacking with respect to appellee Chavez. He testified that he went out on strike "for better benefits and a union." When asked, "So you knew before you went out on strike that you could lose your job?", he answered, "From that point [August 10, 1980] on, yes." He testified that prior to the strike, Jennum never told him he would be an unfair labor practice striker. Although he claimed that Jennum told him this after the strike began, his testimony gives no indication that he stayed out on strike because of this statement. He was asked, "[Jennum] never promised you you would get your job back, did he?". He answered, "No." When asked, "At any time in 1980, did you know the difference in the reinstatement rights of economic and unfair labor practice strikers?", he answered, "No." Because we find no evidence of reliance, we vacate the jury's award in his favor.
 
 
 27
 With respect to appellees McArthur, Peralta and Silva, there is at least some evidence of reliance and, thus, the jury's finding of liability is affirmed. However, in determining damages, we find that reliance was justified only up until October 17, 1980. At that time, McArthur, Peralta and Silva, along with the other strikers, were informed that the NLRB had rejected the union's unfair labor practice claim, and that the strikers were therefore economic strikers. Nonetheless, the strikers voted to continue the strike. Any wage losses which McArthur, Peralta and Silva could have sustained after that date were not due to any union misrepresentations and, accordingly, the union cannot be held liable. Accordingly, we reverse and remand to the district court for calculation of the wages lost by these three appellees from September 4, 1980, to October 17, 1980. We finally note that the appellees cannot recover lost wages for any time spent visiting relatives in Mexico, and all strike benefits and wages earned at replacement jobs must be subtracted from the damage award.
 
 
 28
 We have considered and found without merit all the other issues raised by District 271.
 
 
 29
 We turn briefly to the issues raised by the appellees/cross-appellants and the intervenor. First, we affirm the district court's dismissal of the international union because there is no evidence that it represented itself as appellees' exclusive bargaining representative. Second, we find that the district court did not abuse its discretion in denying the appellees an award of attorneys' fees because the record supports that court's finding that there was insufficient evidence of bad faith conduct on the part of District 271 to justify an award of fees. See Richardson v. Communications Workers of America, 530 F.2d 126, 133 (8th Cir.), cert. denied, 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976).
 
 
 
 [1]
 We reject, however, District 271's claim that this case is controlled by Kuhn, 528 F.2d 767. In that case, we held that the National Association of Letter Carriers and its local affiliate could not be held to a statutory duty of fair representation because they were not Kuhn's exclusive bargaining representative. First, although Kuhn, a janitor at the United States Post Office Department, had recently joined the National Association of Letter Carriers, the record revealed that maintenance employees were actually represented by another union. Similarly, it was clear that the National Association of Letter Carriers and its local affiliate were not, and did not purport to be, the exclusive representative of Post Office maintenance workers. Here, District 271 purported to be appellees' exclusive representative and, in fact, a majority of bargaining unit employees had signed cards designating it as their exclusive representative
 
 
 [2]
 Apparently on this basis, the NLRB held in this case that NSB had not committed an unfair labor practice by refusing to bargain with District 271 on the basis of its card majority
 
 
 [3]
 The appellees implicitly contend that they and all other similarly situated union members are entitled to damages if some members went on strike because of union misrepresentations and they followed to show solidarity. We reject this argument. The district court properly construed the law to require the plaintiffs to prove individual reliance before they could recover damages. For this reason, we also reject the appellees contention that the district court erred in ruling that their action could not proceed as a class action. There are significant differences in the position of each of the appellees as revealed in the above discussion of reliance