985 F.2d 1221
 142 L.R.R.M. (BNA) 2441, 61 USLW 2532,
124 Lab.Cas. P 10,540
 Thomas C. FELICE, Appellant,
v.
Thomas SEVER, individually and in his capacity as President
of Teamsters Local Union No. 30; Ronald Miller,
individually and in his capacity as Business Agent of
Teamsters Local Union No. 30; The International Brotherhood
of Teamsters, Chauffeurs, Warehousemen and Helpers of
America Local Union No. 30; The County of Westmoreland;
and The International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America.
 No. 92-3211.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 2, 1992.
Decided Feb. 8, 1993.
 
 Alex E. Echard (argued), Echard & Snyder, Mount Pleasant, PA, for appellant.
 Ernest B. Orsatti (argued), Jubelirer, Pass & Intrieri, P.C., Pittsburgh, PA, for appellee.
 Before: SLOVITER, Chief Judge, STAPLETON and LAY*, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Chief Judge.
 
 
 1
 Thomas C. Felice, the plaintiff in the district court, appeals from two orders of the district court. One is the entry of judgment after a non-jury trial in favor of defendant union and two of its officers on Felice's breach of the duty of fair representation claim brought under the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151-169 (1988). The other is the earlier grant of summary judgment for the two union officers in their individual capacities on Felice's state law claims. This appeal requires us to examine closely the parameters of an unfair representation claim and the scope of the statutory immunity for individual union officers. We have jurisdiction under 28 U.S.C. § 1291 (1988).
 
 I.
 FACTS AND PROCEDURAL HISTORY
 
 2
 The facts relevant to this appeal are not disputed here and are taken primarily from the district court's findings of fact. Before any of the events relevant to this case, plaintiff Thomas C. Felice was a member of the defendant union, Teamsters, Chauffeurs, Warehousemen and Helpers of America Local Union No. 30 (Local 30 or union), and was employed at M & G Convoy, Inc. (M & G) where he held the position of union shop steward. Local 30 is a "labor organization" within the meaning of the NLRA, see 29 U.S.C. § 152(5) (1988), and is the exclusive bargaining representative of the collective bargaining unit in which Felice was employed at M & G. M & G is an "employer" within the meaning of the NLRA. See id. § 152(2).
 
 
 3
 In October 1987, Felice ran unsuccessfully for union office. The winning slate of candidates included defendant Thomas Sever, the President of Local 30, and defendant Ronald Miller, the Business Manager. Both assumed these offices in January 1988. Thereafter, Sever instituted a campaign of retaliation against Felice, which ranged from "keeping a tight rein on Felice's participation in union meetings" to "attempting to manipulate steward elections." App. at 123. As a result of Sever's efforts, Felice lost his position as shop steward at M & G and the related "super-seniority." Consequently, Felice was laid off from his position at M & G in July 1988.
 
 
 4
 According to the union by-laws, a union member who has not been employed in a collective bargaining unit represented by the union for a period of six months is issued an honorable withdrawal card, which terminates active membership in the union and deprives the member of the right to seek union office. On January 31, 1989, Felice was issued an honorable withdrawal card by Local 30 because he had not obtained employment in another bargaining unit represented by Local 30.
 
 
 5
 The critical conduct for purposes of this appeal occurred during the six-month period from the time of Felice's layoff from M & G to the time he was issued the honorable withdrawal card. On November 14, 1988, Felice applied for a job with the Westmoreland County Park Police. The County of Westmoreland is a political subdivision of the Commonwealth of Pennsylvania. Pursuant to a collective bargaining agreement entered into under the Pennsylvania Public Employe Relations Act (PERA),[1] 43 Pa.Stat.Ann. § 1101.101-1101.2301 (Purdon 1991 & Supp.1992), Local 30 was the exclusive bargaining representative for the collective bargaining unit that included the Park Police of the defendant County of Westmoreland.
 
 
 6
 The County Commissioner, Fey Vidmer, arranged to hire Felice for a position with the Park Police, contingent on the receipt of salary reimbursement from the Private Industry Council of Westmoreland/Fayette, Inc. (PIC), an entity established pursuant to the Job Training Partnership Act of 1982, 29 U.S.C. §§ 1501-1781 (1988 & Supp. II 1990). The PIC could reimburse the County for one-half of Felice's wages earned during a three-month training period. Vidmer's intention was to hire Felice only if the County received this funding. Vidmer completed all of the necessary paperwork on his part except for setting an effective date for Felice's hiring.
 
 
 7
 In order to obtain PIC funding, the County needed Local 30 to sign a Union Concurrence Form approving the hiring of Felice. The Chief of the Park Police, Michael Corsaro, sent the Union Concurrence Form to Miller in mid-November 1988. Miller showed the form to Sever, who directed that it be sent to the union's attorney for review. This procedure deviated from the past practice whereby the business manager would sign similar forms without approval by the union's president or attorney.
 
 
 8
 Beginning in late November 1988 through early December 1988, Felice inquired why his application for employment with the County of Westmoreland had not yet been approved; Miller offered a variety of excuses in response. In late December 1988, the union's attorney approved signing the Union Concurrence Form if the County assured the union that hiring Felice would not result in the layoff of any bargaining unit employees. In early January 1989, Miller sought that assurance from Corsaro. On February 6, 1989, after Felice had been issued an honorable withdrawal card from Local 30, Corsaro responded to Miller's earlier request by a memorandum to Sever stating that the County no longer needed the union's signature on the Concurrence Form as it believed that a recent change in state law prevented it from hiring Felice because he had not completed and was not enrolled in municipal police training.[2] Eventually Felice obtained other employment, but it was not in a bargaining unit represented by Local 30. During the period between Felice's layoff and the issuance of the withdrawal card, Sever continued to express retaliatory intentions toward Felice, stating on several occasions that Felice would "never work in Local 30 again." App. at 123.
 
 
 9
 Felice originally filed this suit in Pennsylvania state court naming five defendants: Sever, Miller, Local 30, the County of Westmoreland, and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO (International Union). Of the eight counts in the complaint, five are relevant to this appeal.[3] Counts I, III, and V alleged that Sever and Miller had violated state law by defaming Felice and interfering with his employment opportunities with the County of Westmoreland. Count II alleged that Sever, Miller, and Local 30 (often referred to jointly as Local 30) had breached the duty of fair representation, primarily by refusing to sign the Union Concurrence Form. Count VIII sought punitive damages for the intentional misconduct of any of the defendants.
 
 
 10
 Defendants removed this action to federal court pursuant to 28 U.S.C. § 1441 (1988 & Supp. II 1990). Thereafter, defendants Sever, Miller, and Local 30 moved for summary judgment. The district court (Chief Judge Cohill) denied summary judgment on the unfair representation claim asserted against Local 30 and against Sever and Miller in their official capacities. It granted summary judgment for Sever and Miller on all of Felice's claims asserted against them as individuals. The court held that under section 301(b) of the Labor Management Reporting Act (LMRA), 29 U.S.C. § 185(b) (1988), Sever and Miller were immune from liability on the claim for breach of the duty of fair representation. The court commented that the unfair representation claim against them in their official capacities was adequate to address their potential liability. The court also granted summary judgment for the individuals on the state law claims on the ground of immunity, stating that the relevant conduct had occurred while Felice was covered by the collective bargaining agreement with the County, and therefore these claims as well were foreclosed by section 301(b). Felice appeals only from the summary judgment on the state law claims.
 
 
 11
 The case was then transferred to Judge Lewis for a bench trial on the remaining claims. At the conclusion of the trial, the district court entered judgment for the defendants on Felice's claim that Local 30 had breached its duty of fair representation by interfering with Felice's employment with the County of Westmoreland,[4] holding that Local 30 did not owe Felice a duty of fair representation in its conduct with respect to the Union Concurrence Form.
 
 
 12
 Felice is appealing the entry of judgment for defendants Sever, Miller, and Local 30 on his breach of the duty of fair representation claim, and the grant of summary judgment for individual defendants Sever and Miller on his state law claims.
 
 II.
 SUBJECT MATTER JURISDICTION
 
 13
 At the outset, we must consider defendants' suggestion that the district court lost subject matter jurisdiction over this case when the court dismissed his civil rights claim against the County of Westmoreland and Felice abandoned his claim for breach of the duty of fair representation under federal law against Local 30 based on conduct that occurred while Felice was employed at M & G. Defendant concedes that the inclusion of these claims in the complaint provided an adequate basis for removal of the action from state to federal court. The fact that the federal claims that were the basis for the removal were unsuccessful or were dropped during subsequent proceedings does not deprive the district court of jurisdiction, unless the federal claims were "insubstantial on their face." Hagans v. Lavine, 415 U.S. 528, 542 n. 10, 94 S.Ct. 1372, 1382 n. 10, 39 L.Ed.2d 577 (1974) (quotation omitted); see also Lunderstadt v. Colafella, 885 F.2d 66, 69-70 (3d Cir.1989). They were not insubstantial in that sense, and thus the district court never lost subject matter jurisdiction. Moreover, it developed that Felice was in fact asserting a breach of fair representation claim against Local 30 grounded on the NLRA which was sufficient to withstand dismissal under Rule 12(b)(1).
 
 III.
 DISCUSSION
 A.
 Duty of Fair Representation
 
 14
 Felice's principal challenge is to the district court's holding that Local 30, Sever, and Miller did not owe him a duty of fair representation under the National Labor Relations Act. Any claim that Felice may have asserted for breach of the duty of fair representation under state law was based on Felice's initial contention that he was an employee of the County of Westmoreland. Felice does not dispute the district court's implicit finding that he was not an employee of the County of Westmoreland. Thus, Felice's argument on appeal is limited to the narrow proposition that because he was a union member, Local 30 owed him a duty of fair representation under federal law in its dealings with the County of Westmoreland regarding his potential employment. Felice's claim raises a legal question over which we have plenary review.
 
 
 15
 The NLRA provides for the certification of a union as the exclusive bargaining representative "in respect to rates of pay, wages, hours of employment, or other conditions of employment...." 29 U.S.C. § 159(a) (1988). It has now been well established that a union certified as an exclusive bargaining representative has a correlative duty of fair representation. In Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967), the seminal case on the statutory duty of fair representation, the Supreme Court reviewed the history of its recognition of such a duty, which began with cases under the Railway Labor Act, 45 U.S.C. § 151 et seq. (1988), alleging racial discrimination by unions, see Steele v. Louisville & Nashville R.R. Co., 323 U.S. 192, 202-04, 65 S.Ct. 226, 232-33, 89 L.Ed. 173 (1944); Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 323 U.S. 210, 213, 65 S.Ct. 235, 237, 89 L.Ed. 187 (1944), and was extended shortly thereafter to the NLRA, see Ford Motor Co. v. Huffman, 345 U.S. 330, 337-38, 73 S.Ct. 681, 685-86, 97 L.Ed. 1048 (1953).
 
 
 16
 Jurisdiction over a claim that a union has breached its duty of fair representation is based on 28 U.S.C. § 1337(a) (1988) (covering "any civil action or proceeding arising under any Act of Congress regulating commerce"), see Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6, 493 U.S. 67, 83, 110 S.Ct. 424, 434, 107 L.Ed.2d 388 (1989), whereas an employee's claim directly against the employer for breach of a collective bargaining agreement after the union failed to process the grievance is filed under section 301(a) of the LMRA, 29 U.S.C. § 185(a) (1988).[5]
 
 
 17
 Ordinarily, an employee files a claim against the union alleging breach of the duty of fair representation together with a claim against the employer alleging breach of the collective bargaining agreement in a "hybrid" section 301/duty of fair representation suit. In the "hybrid" suit, the plaintiff will have to prove that the employer breached the collective bargaining agreement in order to prevail on the breach of duty of fair representation claim against the union, and vice versa. See United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 66-67, 101 S.Ct. 1559, 1565-66, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring in the judgment). Thus, the claims are "inextricably interdependent." Id.; see also DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 164-65, 103 S.Ct. 2281, 2290-91, 76 L.Ed.2d 476 (1983).
 
 
 18
 Nonetheless, the claims are not inseparable. A plaintiff who has a viable "hybrid" claim against both the employer and the union may opt to bring only the section 301 claim against the employer or the breach of duty of fair representation claim against the union. See DelCostello, 462 U.S. at 165, 103 S.Ct. at 2291. Either claim standing alone can be brought in federal court because each has an independent jurisdictional basis. Id.
 
 
 19
 Defendants argue that because the County of Westmoreland is a "political subdivision" not subject to section 301, Felice cannot maintain his duty of fair representation claim against Local 30. We have previously held that the term "employer" in the NLRA excludes "any State or political subdivision thereof," see 29 U.S.C. § 152(2), and therefore the federal courts lack subject matter jurisdiction over a duty of fair representation claim brought by an employee of such an entity. See Manfredi v. Hazleton City Auth., 793 F.2d 101, 102, 104 n. 5 (3d Cir.1986) (per curiam); Crilly v. Southeastern Pa. Transp. Auth., 529 F.2d 1355, 1363 (3d Cir.1976). Both cases, however, were "hybrid" claims in which the unfair representation claim was based on the union's failure to pursue a grievance on behalf of the plaintiff employee against the employer political subdivision. In such a scenario, the absence of federal jurisdiction over the claim against the employer necessarily means there is no basis for federal jurisdiction over the employee's unfair representation claim.
 
 
 20
 The Supreme Court has made clear that its reasoning in Vaca v. Sipes about the relationship between the unfair representation claim against the union and the section 301 claim against the employer for breach of a collective bargaining agreement "in no way implies ... that a fair representation action requires a concomitant claim against the employer for breach of contract." See Breininger, 493 U.S. at 80, 110 S.Ct. at 433 (emphasis in original). Thus, in Breininger, the Court held that a union's administration of a hiring hall is subject to the duty of fair representation even though there is no possible breach of contract claim against the employer. Id. at 87-89, 110 S.Ct. at 436-38. Similarly, a union's negotiation of a collective bargaining agreement is subject to the duty of fair representation, even though again there could be no possible breach of contract action against the employer. See, e.g., Steele, 323 U.S. at 195, 202-03, 65 S.Ct. at 232 (union breached duty of fair representation by entering into a collective bargaining agreement that discriminated against black firemen in employment, promotion, and seniority); see also Nedd v. United Mine Workers of Am., 556 F.2d 190, 200 (3d Cir.1977) (union that undertakes to bargain over future retirees' benefits owes those retirees a duty of fair representation), cert. denied, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978).
 
 
 21
 Duty of fair representation claims against a union have been extended to a variety of other contexts in which there was no basis for a claim against the employer. For example, in Retana v. Apartment, Motel, Hotel & Elevator Operators Union, Local No. 14, 453 F.2d 1018, 1022 n. 6, 1023 (9th Cir.1972), the court held that a union member's claim that the union failed to provide Spanish-speaking members with a bilingual liaison to the union and a copy of the collective bargaining agreement in Spanish, failed to explain to those members their rights and responsibilities as union members, and failed to seek the establishment through collective bargaining of a bilingual supervisory system adequately alleged a breach of the duty of fair representation because each of these actions "concerne[d] matters related to the negotiation or administration of the collective bargaining agreement."
 
 
 22
 Finally, we have held that a union has a duty not to deliberately misrepresent its bargaining efforts and positions in order to induce ratification of a collective bargaining agreement, and the breach of that duty gives rise to an unfair representation claim. See Deboles v. Trans World Airlines, Inc., 552 F.2d 1005, 1018-20 (3d Cir.), cert. denied, 434 U.S. 837, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977); see also Anderson v. United Paperworkers Int'l Union, 641 F.2d 574, 578 (8th Cir.1981).
 
 
 23
 The independence of a duty of fair representation claim against the union from a breach of the collective bargaining agreement claim against the employer does not mean that federal law provides a forum for every complaint the union member may have against the union. The parameters of a viable duty of fair representation claim must be gleaned from the function that such a claim serves.
 
 
 24
 The duty of fair representation exists because the NLRA deprives "individuals in the [collective bargaining] unit of the ability to bargain individually or to select a minority union as their representative" and therefore it is necessary to ensure that individuals are not "deprived of all effective means of protecting their own interests...." DelCostello, 462 U.S. at 164 n. 14, 103 S.Ct. at 2291 n. 14; see also Breininger, 493 U.S. at 86-87, 110 S.Ct. at 436 (duty exists because " 'the national labor policy vested unions with power to order the relations of employees with their employer' ") (quoting N.L.R.B. v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 181, 87 S.Ct. 2001, 2007, 18 L.Ed.2d 1123 (1967)); Masy v. New Jersey Transit Rail Operations, Inc., 790 F.2d 322, 327-28 (3d Cir.1986) (duty is a "counterbalance to the union's position as exclusive bargaining representative"). It has been described by the Supreme Court as a "bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." Vaca v. Sipes, 386 U.S. at 182, 87 S.Ct. at 912. It requires unions to "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Id. at 177, 87 S.Ct. at 910.
 
 
 25
 As is evident from the foregoing, the duty of fair representation is inextricably linked to the union's status as exclusive bargaining representative in the collective bargaining process or in the administration of rights under a collective bargaining agreement. For example, in Breininger the union's obligation to run the hiring hall arose out of a provision of the collective bargaining agreement. As the Supreme Court explained:
 
 
 26
 Only because of its status as a Board-certified bargaining representative and by virtue of the power granted to it by the collective-bargaining agreement does a union gain the ability to refer workers for employment through a hiring hall. Together with this authority comes the responsibility to exercise it in a nonarbitrary and nondiscriminatory fashion, because the members of the bargaining unit have entrusted the union with the task of representing them.... The key is that the union is administering a provision of the contract, something that we have always held is subject to the duty of fair representation.
 
 
 27
 493 U.S. at 87-88, 110 S.Ct. at 437.
 
 
 28
 The thread that links Breininger and other duty of fair representation cases that are not "hybrid" section 301 cases is that the union is acting in its role as exclusive bargaining representative in the collective bargaining process.[6] Because Felice was never employed by the County of Westmoreland and therefore he was never covered by the collective bargaining agreement, he has no section 301 breach of contract claim against the County of Westmoreland and no duty of fair representation claim against the union based on that contract. Thus, Felice's claim falls outside the category of "hybrid" claims where the duty of fair representation most often arises.
 
 
 29
 Nor is this case comparable to those cases imposing a duty of fair representation on unions in the negotiation or administration of collective bargaining agreements. Felice's claim is limited to Local 30's failure to sign the Union Concurrence Form submitted to it by the County of Westmoreland. Local 30 was neither negotiating nor administering a collective bargaining agreement in that context.
 
 
 30
 Felice asserts, however, that the action of Local 30 in refusing to sign the Union Concurrence Form approving Felice's employment with the County of Westmoreland is subject to the duty of fair representation because Felice was a member of Local 30, which was the exclusive bargaining representative for the County of Westmoreland. However, the duty of fair representation that Felice seeks to impose on Local 30 is not linked in any fashion to its role as the exclusive bargaining representative on Felice's behalf, because Felice was not, and had never been, a member of that unit.
 
 
 31
 The requirement that Local 30 sign the Union Concurrence Form approving Felice's employment with the County of Westmoreland did not arise out of Local 30's position as exclusive bargaining representative for the County under the federal labor laws, but arose out of a separate federal law that authorized federal funding for certain job training programs, conditioned on the approval of the union that represented that particular bargaining unit. See 29 U.S.C. § 1553(b)(2) (1988). It was merely happenstance that Felice had been a member of Local 30 by virtue of his earlier employment for a different employer. The need for Local 30 to concur in Felice's employment by the County would have been equally applicable to any prospective employee, whether or not s/he had previously been a Local 30 member. Local 30's power over Felice's employment did not stem from its position as his exclusive bargaining representative, and accordingly the duty of fair representation is inapplicable. Thus, even if we assume that Local 30's delay in approving the Union Concurrence Form was in retaliation for his protected union activity, the duty of fair representation claim is not the vehicle by which such action can be redressed.[7]
 
 
 32
 Therefore we will affirm the judgment of the district court in favor of defendants Local 30, Sever, and Miller as regards their alleged breach of the duty of fair representation.
 
 B.
 Individual Liability of Union Officers
 
 33
 We turn next to Felice's challenge to the grant of summary judgment for defendants Sever and Miller on Felice's state law claims. In his complaint, Felice asserted a number of state law claims against Sever and Miller, ranging from defamation during a meeting of union members and at other unspecified times to interference with Felice's contract with the County of Westmoreland.[8] The district court granted summary judgment for defendants Sever and Miller on Felice's state law claims on the ground that section 301(b) of the LMRA provided them immunity from such claims. The court viewed the applicable Supreme Court precedent as "foreclose[ing] state-law claims, however inventively cloaked, against individuals acting as union representatives within the ambit of the collective bargaining process." App. at 118-19.
 
 
 34
 The district court specifically referred only to the defamation claim. It held that the "[d]efamatory remarks allegedly published to Westmoreland County personnel were made ... after County officials had authorized [Felice's] hiring and he became covered by the collective bargaining agreement between the Local 30 and the County"; that therefore the remarks "fall within the ambit of the collective bargaining process"; and that section 301(b) immunity applies. App. at 119. We exercise plenary review over a district court's grant of summary judgment. Public Interest Research Group v. Powell Duffryn Terminals, Inc., 913 F.2d 64, 76 (3d Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991).
 
 
 35
 Section 301(b) provides that "[a]ny money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets." 29 U.S.C. § 185(b) (1988).
 
 
 36
 Notwithstanding the literal language of this section which merely exempts union agents and members from personal liability for judgments against the union, in Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), the Supreme Court gave the statute a broader reading. The purpose of section 301(b), the Court explained, was to ensure that "only the union was to be made to respond for union wrongs, and that the union members were not to be subject to levy." Id. at 247-48, 82 S.Ct. at 1324. Therefore, the Court held that it would discharge the duty imposed on it by Congress to formulate the federal law to govern section 301(a) suits by holding that even when the claim is only against individual union members, "[t]he national labor policy requires ... that when a union is liable for damages for violation of the no-strike clause, its officers and members are not liable for these damages." Id. at 249, 82 S.Ct. at 1325.
 
 
 37
 Thereafter, in Complete Auto Transit, Inc. v. Reis, 451 U.S. 401, 417, 101 S.Ct. 1836, 1845, 68 L.Ed.2d 248 (1981), the Court considered the issue reserved in Atkinson, 370 U.S. at 249 n. 7, 82 S.Ct. at 1325 n. 7, i.e., whether an employer may bring a claim for damages under section 301(a) against individual union members acting in their personal and nonunion capacity for breaching the no-strike clause in a collective bargaining agreement by participating in a wildcat strike that was not authorized by the union. The Court reasoned that the "penumbra" of section 301(b) immunity, in light of the legislative history, "establishes that Congress meant to exclude individual strikers from damages liability, whether or not they were authorized by their union to strike." Reis, 451 U.S. at 415, 101 S.Ct. at 1844. The Court so held notwithstanding its recognition that the employer would not have a claim against the union, and thus would have no monetary redress. Id. at 416 n. 18, 101 S.Ct. at 1845 n. 18.
 
 
 38
 Sever and Miller view the immunity extended by section 301(b) as covering all "conduct related to their actions as Union officers." Appellees' Brief at 34. We note, preliminarily, that it is questionable whether the campaign that Sever instituted against Felice in retaliation for running for union office could be viewed as official action. We need not decide that issue because the legal principle as enunciated by Sever and Miller is too broad.
 
 
 39
 Both Atkinson and Reis applied the individual immunity to individuals covered by a collective bargaining agreement. In Crilly, we recognized that one consequence of finding that a collective bargaining agreement with a political subdivision was not covered by section 301(a) was that "the provision in section 301(b) protecting the members of the Local from personal liability does not apply, and that state law could impose such liability." 529 F.2d at 1361. In other words, we enunciated the principle, albeit in dictum, that individual immunity is a corollary to a section 301 bargaining agreement.
 
 
 40
 We followed that principle without citation to Crilly in our subsequent decision in Kerry Coal Co. v. United Mine Workers, 637 F.2d 957 (3d Cir.), cert. denied, 454 U.S. 823, 102 S.Ct. 109, 70 L.Ed.2d 95 (1981), upholding a state law damages verdict against individual union officers. Kerry, a coal producer who had no bargaining relationship with the unions that picketed its establishment, won a jury verdict against the unions and individual members and officers for illegal secondary picketing, harassment of employees, and destruction of equipment. On review, we upheld the pendent state law damage verdicts against the individual defendants for intentional interference with contractual relationships. Id. at 964-66.
 
 
 41
 Kerry was analyzed in Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre, Local 120, 647 F.2d 372, 377 (3d Cir.1981), cert. denied, 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982), where the employer, a newspaper publisher, sued the unions for breach of contract and individual members for tortious interference with a contract for establishing a competing newspaper during a strike. We held, in reliance on Atkinson, that under section 301(b), union members could not be liable for tortious interference with a contract "[w]here the individual member liability sought to be imposed gr[ew] out of activities on behalf of a union with which the plaintiff has a bargaining relationship...." Id. We distinguished Kerry, explaining that in that case the employer plaintiff had neither a bargaining relationship nor a contractual relationship with the union to which the individual members belonged. We noted that Kerry was not governed by Atkinson, because Atkinson did not deal "with the liability of individual members of labor organizations with which the employer did not have a contractual relationship." Id. at 377.
 
 
 42
 All of the cases cited applying section 301(b) immunity to individual union officers or members have done so where there was a collective bargaining contract or relationship out of which the damage claim arose. See, e.g., Evangelista v. Inlandboatmen's Union, 777 F.2d 1390, 1400 (9th Cir.1985) (immunity extends to suits against union officers for breach of the duty of fair representation, if suit is brought in the context of a hybrid section 301/duty of fair representation claim); see also Bey v. Williams, 590 F.Supp. 1150, 1154-55 (W.D.Pa.1984) (same), aff'd without opinion, 782 F.2d 1026 (3d Cir.1986); see also Republic Steel Corp. v. United Mine Workers, 570 F.2d 467, 478 (3d Cir.1978).
 
 
 43
 When Judge Cohill granted summary judgment on the state claims, he did so on the ground Felice was covered by a collective bargaining agreement between Local 30 and the County of Westmoreland. However, as we noted in our preceding discussion, after trial Judge Lewis found that Felice was not a member of the collective bargaining unit covering the County. There is thus a patent inconsistency between the two decisions. The status of Felice as an employee vel non of the County of Westmoreland was a disputed issue of fact because the defendants denied that Felice had become such an employee. Therefore, summary judgment could not properly have been predicated on that fact, and the trial court's finding must govern.
 
 
 44
 Although Local 30 was the union representative for employees of the County of Westmoreland, that was not, as we previously noted, by virtue of the NLRA but by virtue of state law. Indeed, Judge Lewis specifically found, "Local 30's signature on a concurrence form was not required by virtue of the collective bargaining agreement between the County and Local 30" but by virtue of the federal law covering PIC funding. See 29 U.S.C. § 1553(b)(2).
 
 
 45
 We conclude that a state law claim brought against a union officer that does not implicate a collective bargaining agreement covered by section 301(a) does not give rise to section 301(b) immunity. When section 301(a) is inapplicable, the immunity provided by section 301(b) is also inapplicable. Thus, the district court's grant of summary judgment on the state law claims against Sever and Miller on the grounds of section 301(b) immunity was in error, and we must reverse.
 
 IV.
 CONCLUSION
 
 46
 For the foregoing reasons, we will affirm the district court's entry of judgment for defendants Local 30, Sever, and Miller on Felice's duty of fair representation claim, but we will reverse the grant of summary judgment for defendants Sever and Miller on Felice's state law claims and remand the case for proceedings in accordance with our opinion. On remand, the district court will have the discretion to retain the case for disposition by it or remand to state court now that there are no longer any federal claims remaining. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357, 108 S.Ct. 614, 622, 98 L.Ed.2d 720 (1988); Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees, 974 F.2d 391, 398 (3d Cir.1992).
 
 
 47
 One half of the taxable appeal costs are to be borne by Felice; the other half by Sever and Miller jointly.
 
 
 
 *
 Honorable Donald P. Lay, Senior Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 The Pennsylvania Public Employe Relations Act applies to all "public employers," including the "Commonwealth of Pennsylvania [and] its political subdivisions," as long as the employer is not otherwise covered by the NLRA or the Pennsylvania Labor Relations Act. See 43 Pa.Stat.Ann. § 1101.301 (1991). The County of Westmoreland is a "public employer" covered by PERA
 
 
 [2]
 The record indicates that the County was in error in its belief as to state law
 
 
 [3]
 Felice voluntarily dismissed all claims against the International Union at an early stage of the proceedings. Following the conclusion of plaintiff's case at trial, the district court entered judgment for the County of Westmoreland and Local 30 on the claims brought under 42 U.S.C. §§ 1983 and 1985 (1988). Felice does not appeal either of these orders
 
 
 [4]
 As noted in note 3, supra, at the conclusion of Felice's case, the district court had granted the defendants' Rule 52(c) motion as to several of Felice's claims
 
 
 [5]
 See Angst v. Mack Trucks, Inc., 969 F.2d 1530, 1536 n. 5 (3d Cir.1992) (section 301(a) provides jurisdiction over "all claims that are substantially dependent upon analysis of the terms of a collective bargaining agreement, regardless of whether the claim is brought by a union or directly by an employee") (citing Allis-Chalmers v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985))
 
 
 [6]
 In Chavez v. United Food & Commercial Workers International Union, 779 F.2d 1353, 1357-58 (8th Cir.1985), the court considered whether the duty of fair representation applied to a union that was not in fact the exclusive bargaining representative. Although the court held that it did, it was only because the union had held itself out as the exclusive bargaining representative to the employer and the employees with the intent of creating reliance by the striking members. Id. at 1356-57
 
 
 [7]
 The Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 401 et seq. (1988), is the primary protection for individual union members against the power of the union. For example, section 101 of the LMRDA protects a union member's right to "express any views, arguments, or opinions; and to express at meetings of the labor organization his views upon candidates in an election of the labor organization," 29 U.S.C. § 411(a)(2) (1988), and section 102 provides that any person whose rights are infringed by the labor organization can bring an action against it, id. § 412. Section 609 makes it unlawful for a union or representative to "fine, suspend, expel, or otherwise discipline any of its members" for the exercise of rights protected under the LMRDA. Id. § 529. At oral argument, Felice acknowledged that he could have brought a LMRDA claim based on the union officers' conduct at issue in this case, but that he had not, instead limiting his LMRDA claim to a challenge to the union rule precluding discharged members from running for office
 
 
 [8]
 The nature of the state law claims asserted is ambiguous. In addition to defamation and interference with a contractual relationship, the complaint refers to "other [undefined] state law tort claims." We treat all of these claims together because no distinction is necessary for our purposes at this time, and the district court made none
 Felice's appellate brief is limited to a discussion of the state law claims relating to defendants' conduct in connection with the County of Westmoreland. Thus, Felice has abandoned any potential state law claims against these defendants arising out of their conduct while Felice was employed at M & G. See Brenner v. Local 514, United Bhd. of Carpenters, 927 F.2d 1283, 1298 (3d Cir.1991) (waiver of argument not included in appellate brief).
 We do not consider the merits of the state law claims, because that issue was not addressed in the summary judgment order under review.