NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-3382

_____

JEFFREY BURNS,
                    Appellant

v.

SALEM TUBE, INCORPORATED; UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION, AFL-CIO-CLC, LOCAL 3713-05

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-08-cv-00289)
District Judge: Honorable Terrence F. McVerry

_____

Submitted Under Third Circuit LAR 34.1(a)
April 19, 2010

Before: SCIRICA[*], AMBRO, and ALARCÓN[**], Circuit Judges

(Opinion filed: May 24, 2010)

_____

OPINION

_____

_____

[*]Judge Scirica completed his term as Chief Judge on May 4, 2010.

[**]Honorable Arthur L. Alarcón, Senior United States Circuit Judge for the Ninth
Circuit Court of Appeals, sitting by designation.

AMBRO, Circuit Judge

Jeffrey Burns appeals the District Court's grant of summary judgment in favor of his former employer and union on claims arising out of the termination of his employment. We affirm.

I.

Because we write primarily for the parties, we only summarize the relevant facts. Burns was employed by Salem Tube, Incorporated ("Salem")—a Pennsylvania corporation that manufactures and sells steel tubing—from 2000 to 2007. While employed by Salem, Burns was a member of the United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC (the "Union"), which has a collective bargaining agreement ("CBA") with Salem.

Burns was disciplined repeatedly for excessive absenteeism during his employment with Salem: in April 2004, he was suspended for five days without pay for missing four days of work in a fifteen-week period; and in August 2005, he was terminated for missing six days of work in a three-month period. After the termination, the Union persuaded Salem to reinstate Burns pursuant to a "Last Chance Agreement," which provided that: (1) Burns "must abide by all areas of the Union Contract[,] the Plant Rules[,] [and the] Safety Rules and Regulations; and (2) "[a]ny infraction [of the Last Chance Agreement within] thirty-six (36) months from the date of its acceptance [August

2

26, 2005] will constitute immediate termination." (App. at 219 (emphases in original).)

In July 2007, Burns received a summons from the Mercer County Common Pleas Court for jury service from Tuesday, August 14, through Friday, August 17. At this time, Burns worked night shifts, beginning at 11:00 p.m. and ending at 7:00 a.m. the following day. (For example, his Monday shift would begin at 11:00 p.m. Sunday night, and end at 7:00 a.m. Monday morning.) It is undisputed that, under the CBA, Salem was required to excuse Burns from an 11:00 p.m. to 7:00 a.m. shift if he was required to report for jury duty the morning that shift ended (and regardless whether he was selected to serve on a panel).

Burns worked the Monday shift (on August 13), but did not report for work on Tuesday through Friday (August 14 through 17). The following week, Salem requested verification of Burns' jury service so it could pay him the difference between his jury duty pay and his regular wages. When Burns failed to provide any documentation, a Salem representative called the Court to verify his jury service. Court personnel informed Salem that Burns had served only two days—Tuesday, August 14, and Thursday, August 16—and had not been required to report on Wednesday, August 15, or Friday, August 17. Court personnel also informed Salem that (1) all jurors are instructed to call a telephone number, beginning at 5:30 p.m. the day before the jurors' scheduled service, to listen to an automated message informing them whether they are required to report the following day, and (2) all jurors who reported for service on Thursday, August 16, were released at

3

11:30 a.m. and told that they were not required to report the following day. For this reason, there was no automated message recorded for jury duty on Friday, August 17.

Burns was confronted with this information during an August 27, 2007 meeting with Union Unit Chairman David King, Grievance Committee Member Todd Barber, and Salem Operations Manager Jerry Stoyer. Burns claimed that he was instructed by court personnel to call *at* 8:00 a.m. (and not before) to determine whether he was required to report that day. Burns admitted that he had not reported on Wednesday or Friday, but explained that by the time he learned that he was not required to report on these days (*i.e.*, when he called at 8:00 a.m.), his shifts had ended. Moreover, Burns claimed that he served until 4:30 p.m.—not 11:30 a.m.—on Thursday, August 16.

Because Burns' explanations contradicted the information Salem had received from court personnel, it asked Burns to submit evidence corroborating his story. Though Burns failed to do so, Salem granted the Union's request for an additional day to investigate Burns' claims further. Union Unit Chairman King spoke with the same court personnel that Salem officials had spoken with, and confirmed that Burns' claims were false. King notified Burns of this information, and reported to Salem that it had nothing to corroborate Burns' story.

Salem terminated Burns on August 31, 2007 for violating his Last Chance Agreement by failing to abide by two of the Plant Rules—"excessive absenteeism" (Rule 18) and "deliberate lying" (Rule 7). After Burns was terminated, the Union's Grievance

4

Committee met to discuss whether the Union should file a grievance. At this meeting, King reported that he could not confirm Burns' version of events, and noted that even if Burns were confused about the Court's jury call-in instructions, that confusion did not explain his claim that he was released at 4:30 p.m. on Thursday and only learned the next morning that he was not required to report on Friday. King noted that Burns was subject to the Last Chance Agreement, and expressed his view that an arbitrator would not give Burns a "third chance." (App. at 546.) The consensus of the Committee was that a grievance challenging Burns' termination would not be successful.

In February 2008, Burns filed a "hybrid" action under § 301 of the federal Labor Management Relations Act ("LMRA")[3] in the United States District Court for the Western District of Pennsylvania, claiming (in Counts One and Two of his Complaint) that (1) Salem breached the CBA when it terminated him, and (2) the Union breached its duty of fair representation when it refused to file a grievance challenging his termination. *See Beidleman v. Stroh Brewery Co.*, 182 F.3d 225, 236 (3d Cir. 1999) ("A 'hybrid' [§] 301 action is one in which a union member sues his or her employer for breaching its contractual obligations under the collective bargaining agreement and the union for breaching its duty of fair representation."). Burns also brought claims against Salem under Pennsylvania statutory and common law (Counts Three and Four). After taking

---

[3] Section 301 of the LMRA authorizes "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce[.]" 29 U.S.C. § 185(a).

discovery, both sides moved for summary judgment in February 2009. In August 2009, the District Court denied Burns' motion and granted Salem's and the Union's motions. Burns timely appealed.[1]

## II.

To prevail on his § 301 claims, Burns was required to prove both that (1) Salem breached the CBA when it terminated him and (2) the Union breached its duty of fair representation when it declined to file a grievance to rebut that termination. *See DelCostello v. Teamsters*, 462 U.S. 151, 165 (1983) ("To prevail against either the company or the Union, . . . [the employee] must not only show that [his] discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union."); *see also Felice v. Sever*, 985 F.2d 1221, 1226 (3d Cir. 1993) ("In the 'hybrid' suit, the plaintiff will have to prove that the employer breached the collective bargaining agreement in order to prevail on the breach of duty of fair representation claim

---

[1] The District Court had jurisdiction over Burns' LMRA claims against the Union and Salem under 28 U.S.C. § 1337(a) and 29 U.S.C. § 185(a), *see Felice v. Sever*, 985 F.2d 1221, 1226 (3d Cir. 1993), and had supplemental jurisdiction over Burns' state law claims against Salem pursuant to 28 U.S.C. § 1367. We have appellate jurisdiction under 28 U.S.C. § 1291.

We review a grant of summary judgment *de novo*, using the same standards as the District Court. *Jakimas v. Hoffmann-LaRoche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007). We view the facts in the light most favorable to the nonmoving party. *Id*.; *Erie Telecomms. Inc. v. City of Erie*, 853 F.2d 1084, 1093 (3d Cir. 1988). A party is entitled to summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits[,] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

against the union, and vice versa.").

Regarding his claim against Salem, Burns first argues that no "just cause" existed to terminate him—either under the CBA or the Last Chance Agreement—because he did not violate the Plant Rules. Regarding Plant Rule 18 ("excessive absenteeism"), Burns (1) points to deposition testimony of personnel for Salem and the Union that there is an "unwritten rule" that "excessive absenteeism" requires at least three unexcused absences in a three-month period; and (2) contends that he did not violate this rule because, at most, he had two unexcused absences during the week of his jury service (*i.e.*, Wednesday and Friday). As for Plant Rule 7, Burns argues that neither the Union nor Salem had reason to believe that he deliberately lied—as opposed to being genuinely confused—when he claimed he had been instructed to call each day at 8:00 a.m. to determine whether he was required to report for jury service. From there, Burns argues that his purported violations of the Plant Rules were "pretexts for termination because of jury service," Appellant's Reply Br. at 11, in violation of Article 15 of the CBA.[2]

Though Burns' arguments strike us as dubious, we need not decide whether Salem breached the CBA, as we agree with the District Court that Burns has not shown the existence of a genuine issue of material fact regarding whether the Union breached its

---

[2] Article 15 of the CBA provides that "[a]n employee who is called for jury duty shall be excused from work for the days in which he serves. Service, as used herein[] includes required reporting for jury duty, when summoned, whether or not actually seated as a juror." (App. at 212.)

7

duty of fair representation. As a result, Burns' § 301 claims against both the Union and Salem fail. *See Sever*, 985 F.2d at 1226.

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."[3] *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991) (*quoting Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)) (internal citation omitted). An employee is "subject to the union's discretionary power to settle or even to abandon a grievance, as long as it does not act arbitrarily." *Bazarte v. United Transp. Union*, 429 F.2d 868, 872 (3d Cir. 1970).

Burns argues that the Union's decision not to challenge his termination was arbitrary because Union representatives "knew" that he did not violate the Plant Rules. Specifically, Burns contends the Union knew that (1) his two unexcused absences were insufficient to constitute a violation of Plant Rule 18, and thus insufficient to constitute "just cause" warranting his termination; and (2) there was no evidence that he deliberately lied about his jury service in violation of Plant Rule 7.

---

[3] Burns does not argue that the Union acted in bad faith or in a discriminatory manner when it declined to file a grievance. *See* Appellant's Br. at 27–32.

We disagree. Though he largely ignores it, pursuant to the Last Chance Agreement Burns agreed (1) to "abide by all areas" of the CBA and the Plant Rules, and (2) that "any infraction" of that Agreement would result in his "immediate termination." Consistent with the plain import of this language, personnel from both Salem and the Union confirmed (in deposition testimony and affidavits) that they believed even one unexcused absence would constitute a violation of the Last Chance Agreement. (App. at 507–08, 545–49.) Burns points to no evidence casting doubt on this understanding, and has not explained why it was "irrational" for the Union to conclude that the Last Chance Agreement imposed stricter attendance requirements on Burns than a regular employee covered by the CBA. *Cf. Int'l Union of Operating Eng'rs, Local 351 v. Cooper Nat'l Res., Inc.*, 163 F.3d 916, 919 (5th Cir. 1999) (a last chance agreement "must be thought of as a supplement to the CBA," which "supersed[es the] CBA in certain circumstances because [it] reflects the parties' own construction of the CBA"). In that light, we have no trouble concluding that the Union's failure to contest Burns' termination on this ground was not arbitrary.[4]

---

[4] Burns alternatively contends that he had *no* unexcused absences the week of his jury service. He notes that the court's written jury duty instructions do not "require[]" jurors to call in *at* 5:30 p.m. the day before their service. (Appellant's Br. at 21; *see also* App. at 225 (document entitled "Jury Duty Information," which states: "REMEMBER: CALL AFTER 5:30 P.M.").) According to Burns, because he did not violate the jury duty instructions by calling in at 8:00 a.m. the next day, the workdays he missed as a result cannot qualify as unexcused absences under the Plant Rules or justify termination under the CBA or the Last Chance Agreement.

Not only does this argument conflict with Burns' claim that he was instructed to

Burns' argument regarding Plant Rule 7 fares no better. Citing to the deposition testimony of Unit Union Chairman King—who agreed it was possible that Burns was "honestly confused" about when he could call in to find out if he was required to report—Burns argues that the Union "knew" that he had not deliberately lied to Salem, but nonetheless refused to "protect his rights." (Appellant's Br. at 30–31.) Even if the Union believed Burns was merely confused about when he could call, Burns could not corroborate his claims that he (1) was discharged from jury service at 4:30 p.m. on Thursday, and (2) only learned that he was not required to report on Friday when he called in at 8:00 a.m. that day. The information the Union received from court personnel directly contradicted these claims; indeed, according to court personnel, there was no automated message recorded for Friday, August 17. In that light, we conclude that the Union's decision not to challenge Burns' termination on this ground was also not arbitrary.

In sum, we agree with the District Court that Burns has failed to demonstrate the existence of a genuine issue of material fact regarding whether the Union breached its duty of fair representation. Far from acting arbitrarily, the Union has more than demonstrated that it carefully considered whether to challenge Burns' termination, and

---

call in *at* 8:00 a.m. the day of his scheduled service, he denied in deposition that he had even seen the instructions on which he now relies. In that light, we cannot conclude that the Union acted arbitrarily by failing to dispute Burns' termination on the basis of this after-the-fact (and convoluted) theory.

came to a reasoned conclusion that any grievance would not be successful. *Cf. Sanders v. Youthcraft Coats & Suits, Inc.*, 700 F.2d 1226, 1229 (8th Cir. 1983) ("A union does not act arbitrarily simply because it does not pursue a grievance that it has decided lacks merit.").

### III.

Burns also argues that the District Court erred in granting summary judgment on his state law claims against Salem. In Count Three of his Complaint, Burns claimed that Salem violated 42 Pa. Cons. Stat. § 4563, which prohibits "[a]n employer [from] depriv[ing] an employee of his employment . . . because the employee receives a summons, responds thereto, serves as a juror or attends court for prospective jury service." *Id.* § 4563(a). In Count Four, Burns brought a common law claim against Salem for wrongful discharge in violation of Pennsylvania's public policy in favor of protecting employees who serve as jurors.

The District Court properly granted summary judgment in favor of Salem on these claims. As to his statutory claim, Burns has failed to produce any evidence—notwithstanding his arguments that he was not technically in violation of the Plant Rules—that anyone from Salem terminated him as a result of his jury service or used the Plant Rules as a "pretext" to fire him on that ground. Indeed, it is undisputed that Salem approved Burns' jury service in advance, and he has failed to produce any evidence that Salem discouraged him (directly or indirectly) from serving. As such,

11

Burns has failed to establish the existence of any genuine issue of material fact as to this claim. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts").

Burns' wrongful discharge claim also fails. It is well-established under Pennsylvania law that only at-will employees may bring wrongful discharge claims. *Phillips v. Babcock & Wilcox*, 503 A.2d 36, 37 (Pa. Super. Ct. 1986). The wrongful discharge cause of action was judicially created for at-will employees "to provide a remedy for employees with no other recourse against wrongful discharge." *Id.* (*citing Geary v. U.S. Steel Corp.*, 319 A.2d 174, 179 (Pa. 1974)). It does not apply to employees covered under a collective bargaining agreement who have both contractual remedies against arbitrary discharge and statutory remedies under federal labor law.[5] *Id.* Thus, because Burns was not an at-will employee, he may not bring a wrongful discharge claim against Salem under Pennsylvania law.

\* \* \* \* \*

In this context, we affirm the District Court's judgment.

---

[5] Burns appears to suggest that, upon granting summary judgment on his federal law claims, the District Court should have declined to exercise supplemental jurisdiction over his state law claims. (Appellant's Br. at 32.) We disagree; the Court had discretion whether to exercise supplemental jurisdiction over Burns' state law claims, *see Peter Bay Homeowners Ass'n, Inc. v. Stillman*, 294 F.3d 524, 534 (3d Cir. 2002), and Burns does not argue that it abused that discretion. Indeed, Burns himself moved for summary judgment on his state law claims.