# United States Court of Appeals

## For the Eighth Circuit

_____

No. 22-1303

_____

Matthew Nagel, individually and on behalf of all others similarly situated

*Plaintiff - Appellant*

Jessica Becklund; Sharon Brown; Pat Darling; Dean Dugan; Matthew Giesler; Steven Giesler; Robert Haas; Jonathan Hamel; Lance Hanson; Eric Hazelbaker; Dawn Herzuck; Mark Hoffman; Anthony Jensen; John Legierski; Carl Lundberg; Martin Manley; Nicolas McBride; Judy McDowell; Shawn Moore; Daniel Morris; Bruce Olson; Mark Oslos; Luwana Meyer Pohl; Gregory Ponting; Dan Quant; Don Renfrow; Annette Ries; Donna Rohling; Paul Rowe; Becky Syverston; Patrick VanHoutan

*Intervenor Plaintiffs - Appellants*

v.

United Food and Commercial Workers Local 653

*Defendant - Appellee*

Minneapolis Retail Meat Cutters and Food Handlers Pension Fund

*Movant*

_____

No. 22-1330

_____

Matthew Nagel, individually and on behalf of all others similarly situated

*Plaintiff - Appellee*

Jessica Becklund; Sharon Brown; Pat Darling; Dean Dugan; Matthew Giesler; Steven Giesler; Robert Haas; Jonathan Hamel; Lance Hanson; Eric Hazelbaker; Dawn Herzuck; Mark Hoffman; Anthony Jensen; John Legierski; Carl Lundberg; Martin Manley; Nicolas McBride; Judy McDowell; Shawn Moore; Daniel Morris; Bruce Olson; Mark Oslos; Luwana Meyer Pohl; Gregory Ponting; Dan Quant; Don Renfrow; Annette Ries; Donna Rohling; Paul Rowe; Becky Syverston; Patrick VanHoutan

*Intervenor Plaintiffs - Appellees*

v.

United Food and Commercial Workers Local 653

*Defendant - Appellant*

Minneapolis Retail Meat Cutters and Food Handlers Pension Fund

*Movant*

_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 20, 2022
Filed: March 24, 2023
_____

Before SMITH, Chief Judge, BENTON and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

Matthew Nagel opposed a new collective-bargaining agreement that passed by a 119-vote margin. He alleges that the union concealed key information, but only nine members said it would have made a difference. Without other evidence that

-2-

the outcome of the vote would have changed, we affirm the grant of summary judgment to the union.

I.

United Food and Commercial Workers Local 653 represents roughly 8,500 grocery-store employees around the Twin Cities. For years, the union and area grocers entered into a series of collective-bargaining agreements that guaranteed certain employee benefits. One benefit, called the 30-and-out rule, allowed employees to retire with benefits after 30 years of service, regardless of their age.

It was part of the grocers' defined-benefit pension plan. *See Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 277 (8th Cir. 2022) (explaining that defined-benefit plans guarantee "fixed payment[s]" at retirement (quoting *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020)). The structure proved to be a problem, however, when "significant [investment] losses" in 2001 and 2008 cut into the plan's assets. It even entered "endangered" territory, meaning one of two warning signs was present: it could cover only 80% of its obligations or it would run out of money within seven years. 26 U.S.C. § 432(b)(1).

To address the shortfall, the union and the grocers imposed a series of changes, one of which was cutting the 30-and-out benefit for new hires. Despite those efforts, the plan's financial health continued to deteriorate. By 2016, it had entered into "seriously endangered" territory, meaning that both financial warning signs were present. § 432(b)(1). In an effort to save the plan, the parties returned to the bargaining table.

By 2018, a potential solution emerged. The parties had a new collective-bargaining agreement that proposed switching funding models, from a guarantee of "fixed payment[s]" at retirement to a variable-annuity-type model. *Matousek*, 51 F.4th at 277 (quoting *Thole*, 140 S. Ct. at 1618); *see Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020) (explaining that the payouts from a

variable annuity fluctuate based on investment returns). In exchange, the union gave up the 30-and-out benefit for anyone who failed to qualify for it by the end of the year.

The changes required the approval of the union's membership. At the ratification meeting, union officials handed out a "highlights" sheet and an individualized summary of how the changes would affect each member's pay and benefits. (Emphasis omitted). None of those documents, however, discussed the elimination of the 30-and-out benefit.

Only by visiting an information table could attendees learn that the "30 year service benefit" would be "eliminated effective 12/31/18." This change did not sit well with Nagel, who joined with about two dozen others in a "heated" discussion about whether there were "other options" for maintaining the plan's solvency. Their efforts came up short: the measure passed by a vote of 228 to 109.

Upset by the change, Nagel sued the union for breach of its duty of fair representation and a violation of the Labor-Management Reporting and Disclosure Act. At their core, these claims are about whether the union hoodwinked members into ratifying the new collective-bargaining agreement by concealing what would happen to the 30-and-out benefit.[1] The district court,[2] for its part, dismissed the Labor-Management Reporting and Disclosure Act claim, denied Nagel's motion for class certification, and granted summary judgment to the union on the fair-representation claim. Only the latter two rulings are before us on appeal.

---

[1]One plaintiff raises similar claims challenging a different grocer's adoption of a nearly identical collective-bargaining agreement.

[2]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota.

II.

We review the district court's decision to grant summary judgment de novo. *See Cross v. United Auto Workers, Local 1762*, 450 F.3d 844, 846 (8th Cir. 2006). "Summary judgment is appropriate when the evidence, viewed in a light most favorable to the nonmoving party, shows no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Couch v. Am. Bottling Co.*, 955 F.3d 1106, 1108 (8th Cir. 2020) (citation omitted).

A.

A grant of exclusive bargaining rights comes with certain responsibilities. *See* 29 U.S.C. § 159(a) (giving unions exclusive bargaining rights). An important one is that unions must "fairly . . . represent" their members during the collective-bargaining process. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). Fair representation means avoiding "arbitrary, discriminatory, or . . . bad faith" conduct. *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998). Nagel alleges that the union acted in bad faith by concealing one of the most important changes in the new collective-bargaining agreement: the elimination of the 30-and-out benefit.

Even assuming that Nagel is right, he still must establish a causal link between the union's bad faith and his injuries. As we have explained, "a union [can] be held accountable only for that portion of the employee's damages attributable to the union's breach . . . ." *Anderson v. United Paperworkers Int'l Union*, 641 F.2d 574, 580 (8th Cir. 1981). More commonly referred to as but-for causation, it requires someone like Nagel to show that "the vote to ratify would have been different" if the union had discussed the 30-and-out change with its members. *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1397 (9th Cir. 1986). Making that showing requires evidence, not conjecture or "assumptions." *Anderson*, 641 F.2d at 579; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (demanding "significantly probative" evidence).

-5-

B.

What is missing here is actual proof. The ratification vote was overwhelmingly in favor: 228 to 109, a 119-vote margin. Nagel offers only nine members who would have voted "no" if they had known about the elimination of the 30-and-out benefit. Even assuming each would have voted the way he thinks, the agreement still would have passed by a wide margin. *See United States ex rel. Cairns v. D.S. Med. LLC*, 42 F.4th 828, 834 (8th Cir. 2022).

Finding those extra votes would not have been easy. One reason is that the plan's funding shortfall affected everyone. It had already driven some grocers to leave the plan, raising further doubts about its long-term financial health. *See* 26 U.S.C. § 432(c), (e). And the new collective-bargaining agreement posed a complex tradeoff that affected individual employees differently: new pay raises and health benefits in exchange for a switch to a variable-annuity model and elimination of the 30-and-out rule.

On the other side of the ledger, the 30-and-out benefit had limited appeal. Due to previous cuts, it was no longer an option for employees hired after March 2010. For those hired earlier, the new agreement phased out eligibility by allowing anyone who hit the 30-year mark by year's end to use it. Others had no interest for another reason: they were set to hit retirement age before reaching 30 years of service. According to the record, only about 450 employees were in a position to lose anything—roughly 12% of the 3,500 employees who were eligible to vote. It was not a "substantial" concern for anyone else. *Anderson*, 641 F.2d at 580.

Even those affected were not uniformly against the changes. Several members of the bargaining committee, for example, voted "yes" despite their potential eligibility for the 30-and-out benefit. It is not much of a stretch to believe that other rank-and-file members, armed with full information, would have made the same decision. *Cf. Bishop v. Air Line Pilots Ass'n Int'l*, 5 F.4th 684, 694 (7th Cir. 2021)

(recognizing that different groups of employees may have "competing interests" in the collective-bargaining context (citation omitted)).

There is another reason to doubt Nagel's "assumptions." *Anderson*, 641 F.2d at 579. The record shows that some members were already on notice that the 30-and-out benefit was in serious jeopardy. During the negotiations, the union's president announced that there needed to be "action" to remedy the plan's "underfunded status," including "changes as it relate[d] to early retirement." Although he promised to "make all efforts to protect those members who [we]re on the cusp of retirement," those who would one day become eligible for the 30-and-out benefit had reason to inquire further.

Some did. One spoke with a bargaining-committee member who "admitted that . . . [employees] would be losing their 30-and-out benefits." Others learned of its elimination through word of mouth. And still others engaged in a "heated discussion" about potential alternatives during the ratification meeting. The point is that the collective-bargaining agreement passed overwhelmingly even though some members knew it would bring the 30-and-out benefit to an end. *See Chavez v. United Food & Com. Workers Int'l Union*, 779 F.2d 1353, 1358 & n.3 (8th Cir. 1985) (requiring proof of reliance on union misrepresentations).

On this record, no reasonable jury could conclude that the union's alleged bad-faith conduct was the but-for cause of the union's ratification of the collective-bargaining agreement. In terms of *actual* evidence, all Nagel has is 228 votes in favor, 109 against, and a total of nine votes that conceivably would have changed. Without a way to make up the difference, he has not done enough to avoid summary judgment. *See Sim v. N.Y. Mailers' Union No. 6*, 166 F.3d 465, 472–73 (2d Cir. 1999) (holding that "the causation element has not been satisfied" when "the most plaintiffs have shown is that two members may have changed their votes," but "the Agreement ultimately passed by twenty-four").

-7-

C.

Nagel views the record differently. By his count, at least 86 members would have voted "no" if had they known the 30-and-out benefit was coming to an end. In addition to six of the plaintiffs are "13 [of their] specifically identified coworkers" and 67 who joined his 30-and-out Facebook group. This evidence, however, still does not get Nagel over the causation hump.

To start, it is by no means clear that everyone who joined his Facebook group would have voted "no." Some may have joined out of curiosity. Others may have just accepted Nagel's unsolicited invitation to join out of support for him, not his views. Counting these members as surefire "no" votes, in other words, relies on guesswork. *See Liberty Lobby, Inc.*, 477 U.S. at 249–50.

The same goes for the plaintiffs' declarations, which predict how *others* would have voted. None appear to be based on "personal knowledge." Fed. R. Civ. P. 56(c)(4); *see Schell v. Bluebird Media, LLC*, 787 F.3d 1179, 1188 (8th Cir. 2015) (emphasizing that "information and belief is insufficient" (citation omitted)). And to the extent they are, they contain inadmissible hearsay, which "cannot be used to avoid summary judgment." *Banks v. John Deere & Co.*, 829 F.3d 661, 667 (8th Cir. 2016) (citation omitted).

Perhaps Nagel's biggest problem, however, is the sheer size of the margin he had to overcome. The additional 86 votes would have made the vote closer, but it still would not have changed the final result.

Recognizing that "simple math" cuts against him, Nagel moves from predictions to reading tea leaves. He relies on a then two-year-old statement by the union president suggesting that eliminating the 30-and-out benefit "could start a 'mutiny' amongst the workers." Even setting aside the possibility that the statement may have been puffery aimed at enhancing the union's bargaining position, a "[s]tray remark[]" like this one does not shed light on how *individual* members

-8-

would have weighed the costs and benefits of changes to the collective-bargaining agreement years later. *Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 959 (8th Cir. 2001); *cf. Gardner v. Wal-Mart Stores, Inc.*, 2 F.4th 745, 749 (8th Cir. 2021) (concluding that three-month-old comments were "too remote in time to support an inference of discrimination").

Nor would greater access to information have necessarily triggered an intense lobbying effort capable of standing in the way of adoption. After all, the changes affected *at most* 12% of eligible voters, and even then, some still voted "yes" given how dire the plan's financial situation had become. Layering wishful thinking on top of guesswork cannot get Nagel past summary judgment either. *See Alston v. Int'l Ass'n of Firefighters, Local 950*, 998 F.3d 11, 32 (1st Cir. 2021) (rejecting "wispy strands of speculation and surmise" as reasons to allow a fair-representation case to reach a jury).

## III.

Given our conclusion, there is no need to address whether the district court should have certified the class. *See In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1004 (8th Cir. 2019). Nor is there any reason to decide the conditional cross-appeal, which focuses on the admissibility of expert testimony. *See Farmland Indus., Inc. v. Morrison-Quirk Grain Corp.*, 54 F.3d 478, 483 (8th Cir. 1995).

## IV.

We accordingly affirm the judgment of the district court.

_____